# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CRAIG WHITFORD,**

    **Plaintiff,**

**-vs-**                   **Case No. 6:06-cv-761-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **reversed and remanded.**

### *I. BACKGROUND*

**A. Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on July 7, 2001 R. 416, 423. He alleged an onset of disability on Plaintiff alleges disability beginning February 18, 2000, due to migraines and impaired vision. R. 64. His application was denied initially and upon reconsideration. R. 26-34, 207-14. Plaintiff requested a hearing, which was held on November 22, 2005, before

Administrative Law Judge Franklin D. Holder (hereinafter referred to as "ALJ"). R. 217-33. In a decision dated January 18, 2006, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 9-18. Plaintiff timely filed a Request for Review of the ALJ's decision. R.8. The Appeals Council denied Plaintiff's request on March 30, 2006. R. 4-6. Plaintiff filed this action for judicial review on June 5, 2006. Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of migraines and impaired vision. R. 64. Plaintiff was 50 years old at the time of the hearing decision on January 18, 2006. R. 12-18, 56, 201. He has a high school education and past relevant work includes time in the service as a medic, employment as an inventory clerk, convenience store manager, and stocker/cashier. R. 65, 70, 77-84, 122.

After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from an affective disorder and migraines, which were "severe" medically determinable impairments, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 14. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform "a full range of light work" (R. 17, Finding 6) and (somewhat inconsistently) "substantially all of the full range of light work" (R. 18, Finding 11). Although the ALJ found that Plaintiff's allegations regarding his limitations were not totally credible for the reasons set forth in the body of the decision (R. 17, Finding 5), the ALJ never specifically stated that he found the Plaintiff's statements to be less than fully credible. *See* R. 15 (stating "However, the claimant admitted that he performs the household chores" but never mentioning a

credibility finding)[1]. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 17, Finding 7. The ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that Plaintiff could perform work existing in significant numbers in the national economy. R. 18, Finding 12. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 18, Finding 14.

Plaintiff now asserts three points of error. First, he claims the ALJ erred by finding he had the RFC to perform light work contrary to treating neurologist's opinion. Second, he argues that the ALJ erred by relying upon the grids, rather than obtaining vocational expert (VE) testimony, because Plaintiff suffered non-exertional impairments. Third, he asserts that the ALJ erred by improperly applying the pain standard and in evaluating his credibility. Because the Court finds that the ALJ's implicit rejection of the treating neurologist's opinion was not based on substantial evidence, the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

---

[1] Based on the ALJ's oversight in this area alone, the Commissioner should have agreed to a remand for further clarification. The Commissioner practically concedes the ALJ's oversight: "The ALJ's discussion of the evidence establishing that Plaintiff's allegations were not totally credible *might not be as thorough* as Plaintiff may have wished." Doc. No. 22 at 9. In fact the ALJ's discussion was non-existent.

person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**RFC and the treating physician's opinion.**

Plaintiff claims that the ALJ should not have found him able to perform light work when the limitations outlined by Dr. Marc Sharfman, Plaintiff's treating neurologist, precluded work even at the sedentary level. Plaintiff contends that there was no indication by the ALJ as to his reason for discounting Dr. Sharfman's opinion.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments

is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff contends that the ALJ did not have good cause for rejecting the opinion of Dr. Sharfman, a board certified neurologist, who had thoroughly examined Plaintiff over a five-year period before reaching his conclusions in regard to the claimant's limitations resulting from his medical conditions. The ALJ accurately cited Dr. Sharfman's opinions from the headache residual functional capacity assessment on Plaintiff. R. 14. However, he failed to explain why he discounted Dr. Sharfman's opinion. The closest statement to a rejection of Dr. Sharfman's opinion is:

> Although Dr. Sharfman determined that the claimant's headaches would preclude the claimant from being [able] to perform basic work activities on November 14, 2005, Dr. Sharfman also noted that the claimant *only* experienced headaches one and a half *times* per week and that the claimant was able to tolerate moderate work stress.

R. 15 (emphasis added).

First, the ALJ misquoted Dr. Sharfman's opinion. Dr. Sharman's RFC assessment stated that Plaintiff suffered from post traumatic intractable migraines (R. 195) that occurred for "1½ *day*s a week" lasting for 24 to 36 hours (R. 196), and not, as the ALJ found, "one and a half *times* per week" which would presumably be far less lengthy. R. 15; *see also* R. 14 (same misquote: "one and a half times per week"). Dr. Sharfman described the headaches as "left hemicranial, 10/10 severe." R. 195. Plaintiff's testimony was consistent with Dr. Sharfman's notes; he had migraines "a day and a half to two days" per week that would put him out for a couple of days. R. 228.

Second, the ALJ failed to refute or state any basis whatsoever for rejecting Dr. Sharfman's opinion. Attempting to inject matters not actually relied on by the ALJ, the Commissioner contends that ALJ properly discounted Dr. Sharfman's opinion because ALJ may have considered Dr. Sharfman's opinion too reliant on Plaintiff's subjective complaints of pain, which the Commissioner contends is not an acceptable basis for a neurologist's opinion. The Commissioner misrepresents the ALJ's opinion and disingenuously argues "*the ALJ found* that [Dr. Scharfman's] records covering treatment from October 18, 2000, through February 12, 2004, do not include medical signs or laboratory findings to support his opinion regarding Plaintiff's ability to work" and cite to pages 14 to 15 of the ALJ's opinion. The ALJ's decision–not on those pages or any other pages–says nothing of the sort. *See* Doc. No. 22 at 10 (emphasis added)[2].

The Commissioner contends the record shows that Plaintiff kept complaining of headache symptoms, even after repeated reports of improvement with his treatment plan. R. 143-69; R. 229 (medications cut symptoms in half). Dr. Sharfman consistently reported, based on "objective" criteria, Plaintiff could return to fully duty; but based on "subjective" criteria, Plaintiff was still experiencing episodic disability headache two days per week. R. 145, 149-52, 158, 161, 169. The Commissioner reads into this that Dr. Sharfman implicitly believed Plaintiff was capable of returning to work full duty but left it up to "Plaintiff's discretion" despite twice weekly migraines. Doc. No. 22 at 11. The Commissioner also complains that Dr. Sharfman's medical records do not reflect any hospital visits (R. 299); or treatment between February 2004 until the November 2005 RFC (R. 195-

---

[2]Once again, this omission in the ALJ's decision should have led the Commissioner to agree to a remand for the ALJ to clarify his analysis. *See* n.1 *supra*.

200); or frequent enough treatment on a regular basis. R. 143-69 (February 2002 to July 2002, two- or three-month intervals; July 2002 to 2004, six- or seven-month intervals)[3].

Because the ALJ cited *not one* of the reasons cited by the Commissioner for ignoring Dr. Sharfman's opinion, the Court finds that the ALJ's opinion is not supported by substantial evidence. Moreover, assuming *arguendo* the ALJ had relied on the Commissioner's reasoning, those reasons would not be substantial evidence for rejecting Dr. Sharfman's opinion that Plaintiff suffered from intractable headaches and had the limitations he assigned. R. 195-200. A claimant can suffer from "severe" migraines and display classic migraine symptoms but still have a normal MRI, CT scan, and opthalmological examination. *See Federman v. Chater,* No. 95-Civ-2892, 1996 WL 107291, *2 (S.D.N.Y. Mar. 11, 1996) ("[b]ecause there is no test for migraine headaches, 'when presented with documented allegations of symptoms which are entirely consistent with the symptomatology for evaluating [migraine], the Secretary cannot rely on the ALJ's rejection of the claimant's testimony based on the mere absence of objective evidence.'").

In an ERISA long-term disability case considering the same issue of disabling migraines, *Cecil v. Reliance Standard Life Ins. Co.,* the district court pointed out the fallacy in the insurance company reviewing physician's conclusion that the plaintiff did not suffer debilitating migraines, which was based on the incorrect assumption that a normal brain diagnostic is proof that a patient does not suffer from migraines. No. 7:05cv0003, 2005 WL 2291225, *7 (W.D. Va. Sep. 19, 2005). In *Cecil*, the reviewing physician was also incorrect in concluding that there was a lack of evidence of migraines "stemming from his assertion that past diagnoses had been based solely upon the plaintiff's subjective assertions of pain." *Id*. The court held that, "as noted in reports by various doctors that treated

---

[3] The Commissioner also points to the opinions of state agency reviewing physicians from 2004 that Plaintiff's migraines were not severe. R. 178, 179-193, 194.

[plaintiff], she exhibited tangible symptoms of migraines that are included in the diagnostic criteria for migraines as formulated by the IHS. . . . such as vomiting, nausea, phonophobia, and photophobia, and thus, it is incorrect [to] assert that there were no physical manifestations of [her] migraines." *Id*.

The court in *Cecil* applied specific headache criteria:

> The accepted standard by which a migraine should be diagnosed in clinical practice is through the diagnostic criteria formulated by the International Headache Society ("IHS"), *available at* http://www.i-h-s.com (located in the "Guidelines" section). *See* Dr. John H. Noseworthy, M.D., 1 Neurological Therapeutics: Principles and Practice 76 (2003). The IHS guidelines utilize a combination of diagnostic criteria to determine whether a person is suffering from one of the many types of migraines. [The plaintiff] displayed "classic" symptoms of migraines such as nausea, vomiting, photophobia, and phonophobia, as noted by various doctors that treated her.

*Id*. at *8. In this case, Dr. Sharfman's reports reflect complaints of these "classic" symptoms, *i.e.*, nausea, vomiting, light and noise sensitivity (phonophobia and photophobia), ringing in ears, and light-headed disequilibrium. R. 166.

Dr. Sharfman first evaluated Plaintiff on October 18, 2000, six months after the battery acid splashed into Plaintiff's left eye at work on February 18, 2000, and well after Plaintiff's treatment by other eye specialists. R. 166. At that time Plaintiff complained of flashing in his left eye, headaches and vomiting. R. 166. Dr. Scharfman noted:

> Pain occurring 12 to 14 times per month, severe in intensity, left retro-orbital in location throbbing in quality with associated nausea, vomiting, light and noise sensitivity, eye tearing, visual symptoms (yellow background, sometimes gray, with flashing, PRESENT WITH EYES CLOSED). In addition, ringing in ears, light-headed disequilibrium. Exacerbated by light, noise, and movement. Improved by bending down. . . . I showed the patient a classic migraine fortification spectrum. This is what he is seeing and has been present since the accident constantly with eyes closed. . . . I discussed with him that based on his visual symptoms being present constantly with his eyes closed, this suggested an irritative focus within the central nervous system, not within the eyeball itself based on my knowledge.

R. 166-68 (capitals in original). Dr. Scharfman in that initial evaluation still wanted to rule out other causes, but opined that Plaintiff suffered from intractable classic migraine secondary to activation of

-8-

the trigeminal vascular system due to irritation of the left eye. R. 168.  As Plaintiff pointed out in his disability reports to the SSA, he suffered extensively from nausea and had experienced extreme weight loss, dropping from 216 pounds prior to the accident in February 2000 (R. 103) down to 158 pounds by August 2004, or a loss of almost sixty pounds for a man who is 5'10" tall.  R. 100, 118; R. 143 (weight of 164 pounds in February 2004 by Scharfman's office); R. 167 (height 5'10"; weight 199 pounds in October 2000-six months after accident by Scharfman's office).  This significant weight loss is itself an objective indication that Plaintiff suffered extensively from nausea and diarrhea related to the migraines.  R. 196.

Dr. Sharfman's notes reflect precisely why he was careful to always note "objective" versus "subjective" assessments in his medical reports, which were prepared for the Worker's Compensation carrier.  R. 157.  On November 3, 2000, he "discussed with patient Worker's Compensation is an objective system and not a health care or subjective symptom provider." R. 157.  In that assessment, he stated:

> [Patient] relates no prior visual symptoms or headache before February 18, 2000.  On that day *objective* acid splash with *objective* ophthalmologic findings occurred.  Since that time due to visual symptoms and pain, stress has developed with him questioning will he ever get better.  There have not been any new or warning features, rather persistence of a stereotyped symptom complex.
>
> The theory behind headache with visual symptoms is that we all have a threshold for developing this.  His threshold was violated by the mechanism of injury February 18, 2000 resulting in activation of the trigeminal vascular system with secondary intractable migraine with aura based on current information available.

R. 157 (emphasis added).  In the "objective" section of his notes, Dr. Scharfman noted Plaintiff was "positive [for] sunglasses" with a "MR brain normal intracranial contents." R. 157.  Dr. Sharfman's impression was "eye trauma with secondary irritation/activation of the trigeminal nerve which

supplies the cornea which resulted in intractable migraine with aura." R. 157. He explained that a "normal EEG does not rule out central nervous system dysfunction." R. 155.

Plaintiff testified at the hearing that in the four and a half years he had been seeing Dr. Scharfman, the neurologist had not been able to come up with a combination of medications that would totally get rid of the migraines, but the intensity had changed and the longevity had changed. R. 232. Plaintiff candidly reported that the prescribed medications and biofeedback recommended by Dr. Scharfman "cut things in half." R. 93. "This combo. has given me the best results and most control" but he still experienced the pain and after effects of migraines one and a half to two days per week. R. 92 (August 2003).

Because the Court finds the ALJ's decision misquoting or implicitly rejecting Dr. Scharfman's opinion was not supported by substantial evidence, the decision is **REVERSED** and **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). Upon remand, if a revised decision is not warranted, the ALJ will obtain outstanding treatment and other medical records, conduct a supplemental hearing with additional testimony from Plaintiff and medical and vocational experts; reevaluate plaintiff's pain complaints and non-exertional limitations and residual functional capacity based on the expanded record under the applicable rulings and regulations. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on July 9, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record